UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS LARSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 24-808 (RBW) |
| | ) |
| KRISTI NOEM,[1] | ) |
| in her official capacity as Secretary | ) |
| of the U.S. Department of | ) |
| Homeland Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Thomas Larson, brings this civil action against the defendant, Kristi Noem, in her official capacity as Secretary of the United States Department of Homeland Security ("DHS"), pursuant to the Rehabilitation Act, 29 U.S.C. §§ 701–795. See Complaint ("Compl.") at 1, ECF No. 1. Specifically, the plaintiff alleges that his employer, the United States Secret Service ("Secret Service"), a component of DHS, (1) engaged in discrimination and harassment based on the plaintiff's disability; and (2) retaliated against him for engaging in protected activity. See id. Currently pending before the Court is the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Defendant's Motion to Dismiss ("Def.'s Mot.") at 1, ECF No. 11. Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendant's motion.

---

[1] Kristi Noem, the Secretary of the United States Department of Homeland Security, is automatically substituted for her predecessor, Alejandro Mayorkas, pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem."), ECF No. 11-1; (2) the Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"),

(continued . . .)

I.  BACKGROUND

A.  Factual Background

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified.  The plaintiff was hired in 2010 by the Secret Service Uniformed Division as a police officer.  Compl. ¶ 9.  On November 23, 2017, the plaintiff was involved in an accident "while on duty and suffered a severe concussion and back injury[,]" id. ¶ 10, resulting in "visuomotor problems, trouble concentrating, near constant back[ ]pain, and depression[]" that lasted into 2019, id.  "On June 19, 2019, [the plaintiff]'s doctor cleared him to work light duty[,]" but "he experienced trouble concentrating and fatigue" while working, id., and "on September 10, 2019, [the plaintiff]'s doctor deemed him incapacitated for duty[,]" id.  "After additional treatment, [the plaintiff] was able to return to work full time on October 28, 2019."  Id.

Subsequently, on December 22, 2020, "[the plaintiff] took the COVID-19 vaccine" and was hospitalized a few weeks later "following an adverse reaction including a rash and swelling, thought to be a hyper-immunity reaction."  Id. ¶ 11.  "The rash persisted for several months, despite treatment, and [the plaintiff] was unable to return to work until May 6, 2021."  Id.

Following his hospitalization, the plaintiff filed a workers' compensation claim for his adverse reaction to the COVID-19 vaccine through the Secret Service's employee portal.  See id. ¶ 12.  On August 30, 2021,[3] the United States Department of Labor's Office of Workers' Compensation Programs ("OWCP") notified the plaintiff that it had determined that he was "not

---

(. . . continued)
ECF No. 14; and (3) the Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 16.

[3] In his Complaint, the plaintiff represents that the date was August 30, 2020.  Id. ¶ 13.  However, it appears to the Court, based on the other allegations in the Complaint and the defendant's representations, that the correct date is August 30, 2021.

entitled to continuation of pay [ ] at that time[,]" id. ¶ 13, but OWCP also advised the plaintiff that he could "claim compensation for wage loss resulting from this decision by filing [a] Form CA-7 through [his] employer[,]" id.

On October 4, 2021, the plaintiff's physician concluded in a report that the plaintiff was "incapacitated for duty" due to his adverse reaction to the COVID-19 vaccine because although the plaintiff "attempted to work in full gear, [he] exhibited increased pain and anxiety[,]" and he "[could not] sit in a car on duty or use a bicycle." Id. ¶ 16. On October 13, 2021, the plaintiff sent the report from his physician to Secret Service management and Rona Woodfolk, a Human Resource Specialist, asking for assistance in filing his Form CA-7. See id. ¶ 17. Rather than responding directly to the plaintiff, Ms. Woodfolk removed the plaintiff from the email chain and asked why he had not long ago returned to work "on a restricted schedule." Id. In response to Ms. Woodfolk's inquiry, the plaintiff's supervisor, Sergeant Nicole Pittman, explained that, upon the plaintiff's return to full duty, he had been transferred to the Foreign Missions Branch and was in a patrol vehicle, and noted that she "d[id not] believe [that the plaintiff's] physician [was] aware that he ha[d] the option to work desk work or limited duty[.]" Id.

That same day, Ms. Woodfolk informed Sergeant Pittman that the plaintiff "should be coded as using sick leave, annual leave, or leave without pay[,]" because he did not have a medical justification for disability compensation, and that management should request that the plaintiff provide "a detailed medical report listing his restrictions and accommodate [him] accordingly." Id. ¶ 18. During the following week, Ms. Woodfolk discussed the plaintiff's claim with Sergeant Pittman and Inspector David Garrett, and Ms. Woodfolk ultimately concluded that the plaintiff's physician's note regarding his incapacitation was "not sufficient to put him out of work[,]" because it indicated that he could "at least [work] light duty[.]" Id. ¶ 21.

In response, on October 25, 2021, the plaintiff "emailed Ms. Woodfolk's supervisor requesting assistance because she was failing to assist with the Form CA-7 after determining that his claim did not meet the criteria."  Id. ¶ 24.

Subsequently, on November 3, 2021, Mana K. Ali-Carter, PhD, a Rehabilitation Psychologist, prepared a letter regarding the plaintiff's condition, "explaining that [the plaintiff] had been diagnosed with Adjustment Disorder with anxious and depressed mood, and that his response to the COVID-19 vaccine 'exacerbated his overwhelm, anxiety, and depressive symptoms[.]'"  Id. ¶ 25.  Two days later, "[o]n November 5, 2021, [the plaintiff]'s physician approved [him for] 'light duty telework.'"  Id. ¶ 26.  Sergeant Pittman informed "others in management that the Uniformed Division 'd[id] not have telework positions available,' but that once [the plaintiff was] 'cleared to report . . . in a limited duty capacity,'" he would be permitted to perform "sedentary work."  See id.

On November 8, 2021, Ms. Woodfolk emailed Dr. Nadeem Siddiqui, a Supervisory Medical Officer at the Secret Service, to "advise [the Uniformed Division of] acceptable light duty options" that would be available for the plaintiff.  Id. ¶ 27.  Inspector Garrett responded that the plaintiff was "only cleared for telework[]" and that he had not been authorized for a telework assignment.  Id.  Upon further questioning from Ms. Woodfolk about other available assignment options for the plaintiff, Dr. Siddiqui explained that if the plaintiff was limited to telework, Dr. Siddiqui was "not able to over-ride that recommendation."  Id.  Ms. Woodfolk again questioned how the plaintiff's physician concluded that a rash would prevent the plaintiff "from doing sedentary work in an office setting[,]" id., and indicated that the OWCP claims examiner assigned to the plaintiff's claim would request more detailed information from the plaintiff's physician, see id.  On November 8, 2021, in response to that inquiry, the plaintiff's physician

4

informed OWCP that the plaintiff "[was] not able to perform his full duty position currently due to the pain and pruritus that the rash causes[,]" and that "he [was] unable to wear a uniform because contact with the clothing on his skin exacerbates the symptoms." Id. ¶ 28.

On November 22, 2021, the plaintiff "provided an evaluation [to Ms. Woodfolk] by Dr. Ali-Carter" which stated that "[the plaintiff]'s psychological and neurocognitive profile ma[de] him unfit for duty as a Secret Service Officer[.]" Id. ¶ 30. And, on November 30, 2021, the plaintiff "emailed Ms. Woodfolk, resending Dr. Ali-Carter's medical record declaring him unfit for duty and notes from his nephrologist about his vaccine injury and related diagnosis." Id. ¶ 31. In response, Ms. Woodfolk stated that the plaintiff was attempting to "merge together" his two separate claims: (1) the first relating to his November 23, 2017, accident, after which the plaintiff was "deemed fit to return to full duty" on August 5, 2019; and (2) the December 26, 2020, claim relating to his COVID-19 vaccine injury. Id. Ms. Woodfolk stated that "[t]he medical [information] that [the plaintiff] ha[d] been sending . . . [was] solely not related to [his December 26, 2020,] claim[,]" and that there was nothing that the plaintiff or his physician had provided to show that he was "incapable of working in a sedentary position regarding [his December 26, 2020,] case." Id. After receiving this response, the plaintiff sought to have his Form CA-7 assistance request transferred to a different Human Resource Specialist. See id. ¶ 32.

On December 30, 2021, the plaintiff "applied for the voluntary leave transfer program[,]" id. ¶ 33, and shortly thereafter, on January 4, 2022, "submitted paperwork to request Family and Medical Leave Act [ ] leave in conjunction with his request to be placed on the annual leave donation list and requested leave bank donations to remain in a paid status[,]" id. ¶ 34. Then, on January 20, 2022, the plaintiff "sent an email to several [Secret Service] employees . . . requesting leave donations[,]" id. ¶ 35, but, later that day, several coworkers notified him that

5

they were "unable to donate . . . because [the plaintiff's] email had been deleted from the server[,]" id.

On January 21, 2022, Inspector Garrett emailed the plaintiff and inquired "whether [the plaintiff] could perform 'a telework function' for another directorate[,]" id. ¶ 36, to which the plaintiff reiterated that he had been declared "temporarily incapacitated for duty[,]" id. Later that day,[4] Dr. Steven Fong, a Secret Service Physician, emailed Security Chief Michael Mullen "indicating that [the plaintiff]'s psychologist found his psychological and neurocognitive profile ma[de] him unfit for duty." Id. ¶ 37. In response, Mr. Mullen represented that he was suspending the plaintiff's clearance "because of psychological issues" and the fact that there was "a whole lot more to the story that involves workman[']s comp[ensation] claims, [G]o[F]und[M]e pages, [and] official messages [the plaintiff] ha[d] sent out regarding his situation and to drum up interest in his [G]o[F]und[M]e page." Id. That same day, Uniformed Division management visited the plaintiff's home and informed him that the Secret Service had "placed him on administrative leave effective immediately[,]" id. ¶ 38, and that he was to report to Headquarters on January 24, 2022 for a meeting, see id., despite the plaintiff's wife's representation that the plaintiff's "treating providers specifically stated [that] he was incapacitated for duty both physically and cognitively and that he was not permitted to drive to work[,]" id.

On January 24, 2022, the plaintiff reported to Headquarters to meet with Inspector Ricky K. Neal Jr. and was issued "a Notice of Suspension of Top Secret Security Clearance which asserted that the decision to suspend [the plaintiff]'s security clearance was based on medical

---

[4] In his Complaint, the plaintiff represents that the email was sent on January 21, 2021. Compl. ¶ 37. However, it appears to the Court, based on the other allegations in the Complaint and the defendant's representations, that the correct date is January 21, 2022.

6

documentation stating that his 'psychological and neurocognitive profile' ma[de] him unfit for duty as a Secret Service Officer and prevent[ed] him from holding a clearance." Id. ¶ 40. Mr. Mullen further represented that "once Dr. Fong was made aware of Dr. Ali-Carter's note, [the Secret Service] had to suspend [the plaintiff's] clearance." Id.

On January 27, 2022, Inspector Neal issued a formal notice placing the plaintiff on administrative leave "due to concerns regarding [his] actions as an employee" of the Secret Service. Id. ¶ 42. However, on February 14, 2022, the administrative leave notice was amended to state that the Secret Service "placed [the plaintiff] on administrative leave 'due to medical documentation provided by [the plaintiff's] physician that stated [he was] unfit to perform the duties of a Secret Service Police Officer.'" Id. ¶ 44. Consequently, "[o]n March 28, 2022, Joseph Lozano, Deputy Chief Integrity Officer, issued a notice of Proposed Indefinite Suspension to [the plaintiff], dated March 21, 2022, proposing to indefinitely suspend him without pay due to the suspension of his Security Clearance." Id. ¶ 45. However, "[o]n May 24, 2022, Darnelly de Jesus, Deputy Assistant Director/Chief Integrity Officer, issued a Decision not to effect the Proposed Indefinite Suspension and continued [the plaintiff] on administrative leave[,]" id. ¶ 46, and the plaintiff's clearance was subsequently reinstated, see id. ¶ 47.

Approximately nine months after the plaintiff's initial request for assistance with his Form CA-7, the Department of Labor recommended that he "could only work in a sedentary capacity from home for up to two hours in a day, with [ten]-minute breaks every half hour[,]" and thereafter Sergeant Pittman agreed to sign and process the plaintiff's Form CA-7. Id. ¶ 48. Subsequently, "[e]ffective July 16, 2023, [the plaintiff] separated from [the Secret Service] and was placed on disability retirement[,]" and on March 11, 2024, "[the Secret Service] denied [the plaintiff]'s application for retirement credentials." Id. ¶ 49.

7

B.      **Administrative and Procedural Background**

The plaintiff first contacted an Equal Employment Opportunity ("EEO") counselor on May 5, 2022.  See Def.'s Mot., Exhibit ("Ex.") 1 (EEO Counseling Report – Individual Complaint ("EEO Counseling Report")) at 1, ECF No. 11-3.  Then, on June 17, 2022, the plaintiff filed a formal complaint of discrimination, asserting claims of harassment and discrimination based on his disability and retaliation for engaging in protected activity.  Compl. ¶ 7.  On July 11, 2022, the Secret Service accepted the plaintiff's complaint for an investigation, and the plaintiff requested a hearing before the U.S. Equal Employment Opportunity Commission ("EEOC") following the completion of the investigation.  Id.  On October 27, 2023, the plaintiff voluntarily withdrew his EEOC hearing request, and the Secret Service issued a Final Agency Decision on December 21, 2023.  Id. ¶ 8.

On March 20, 2024, the plaintiff filed his Complaint in this case, alleging that he was subjected to "discrimination and harassment based on his disability and retaliation for protected activity" under the Rehabilitation Act.  Compl. at 1.  Specifically, the plaintiff claims that: (1) DHS and the Secret Service "discriminated and harassed him based on his disability" by "plac[ing] him on administrative leave, suspend[ing] his security clearance, propos[ing his] indefinite suspension, den[ying] that [he] was medically unable to work and [a] reasonable accommodation, [and] interfer[ing] with his request for leave bank donations[,]" id. at 1; and (2) the "suspen[sion] [of his] security clearance and [ ] proposed . . . indefinite suspension[]" constituted retaliation for his protected activity, id. ¶ 57.  On June 28, 2024, the defendant filed her motion to dismiss.  See Def.'s Mot. at 1.  The plaintiff then filed his opposition to the defendant's motion to dismiss on July 26, 2024, see Pl.'s Opp'n at 1, and the defendant filed her reply on August 16, 2024, see Def.'s Reply at 1.

## II.  STANDARD OF REVIEW

A.  **Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable interference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

9

### III.     ANALYSIS

The defendant moves to dismiss the plaintiff's suit on several grounds pursuant to Rule 12(b)(6). Specifically, the defendant asserts that the plaintiff failed to timely exhaust his administrative remedies under the Rehabilitation Act as to all claims except for one—i.e., his claim arising out of the notice of proposed indefinite suspension. See Def.'s Mem. at 9–10. However, the defendant further argues that the plaintiff's claim relating to the notice of proposed indefinite suspension fails to state a claim for disability discrimination under the Rehabilitation Act because, inter alia, he "fails to allege adverse personnel actions" that "he suffered [from] the proposed indefinite suspension[,]" because the plaintiff never in fact served the proposed indefinite suspension.[5] Id. at 16–17, 19.

In response, the plaintiff argues that he "timely exhausted his administrative remedies because at least one discrete act contributing [to his] claims of hostile work environment and retaliation falls within the forty-five[-]day reporting period[,]" Pl.'s Opp'n at 1, and that he has sufficiently stated discrimination and retaliation claims arising out of the proposed indefinite suspension, see id. at 10–12.

The Court will first address whether the plaintiff timely exhausted his administrative remedies as to his Rehabilitation Act claims, before determining whether any properly exhausted claims state a claim under the Rehabilitation Act.

---

[5] The defendant also argues that the plaintiff's "disability discrimination and retaliation claims fail on the merits" under the Rehabilitation Act because the plaintiff does not "qualify" as an individual for the purposes of pleading a claim for failure to reasonably accommodate him because "he was unable to perform the essential functions of his position, with or without accommodation[,]" Def.'s Mem. at 13, and "fails to plead a viable claim of retaliation because he does not allege plausible facts to support an inference that his engagement in statutorily protected activity was the but for cause of the Secret Service's actions[,]" id. at 13, 20. Because the Court ultimately concludes that the plaintiff's claims fail because they are either untimely, see infra Sec. III.A, or fail to state a claim, see infra Sec. III.B., the Court need not address these alternative arguments in support of dismissal.

**A.     Whether the Plaintiff Timely Exhausted His Administrative Remedies as to His Claims Pursuant to the Rehabilitation Act**

The Rehabilitation Act "limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint.'" Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006) (quoting 29 U.S.C. § 794a(a)(1)); see also Latson v. Holder, 82 F. Supp. 3d 377, 385 (D.D.C. 2015). Thus, an individual suing under the Rehabilitation Act must "exhaust [his] administrative remedies before [he] can file suit to enforce the Act's protections." Doak v. Johnson, 798 F.3d 1096, 1099 (D.C. Cir. 2015). For a plaintiff to exhaust his remedies under the Rehabilitation Act, he must "initiate contact" with an EEOC counselor within forty-five days of the date of the allegedly discriminatory conduct. 29 C.F.R. § 1614.105.

The Supreme Court has held "that each discrete adverse employment action triggers the statutory exhaustion requirement[.]" Reshard v. Lahood, No. 87-cv-2794 (RBW), 2010 WL 1379806, at *13 (D.D.C. Apr. 7, 2010), aff'd, 443 F. App'x 568 (D.C. Cir. 2011) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)). Specifically,

> [d]iscrete acts . . . "such as termination, failure to promote, denial of transfer, or refusal to hire are individual acts that occur at a fixed time . . . [and a] plaintiff[] alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others."

Id. (first alteration in original) (quoting Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004)).

"[T]he Rehabilitation Act['s] exhaustion requirement is jurisdictional in some cases— when a plaintiff altogether fails to file an EEOC charge raising to his claims, as required under statute, the Court must dismiss for lack of subject matter jurisdiction." Ayo-Aghimien v. Att'y Gen. of U.S., No. 24-cv-1341 (DLF), 2025 WL 407308, at *4 (D.D.C. Feb. 5, 2025) (citing Spinelli, 446 F.3d at 162). However, "when a plaintiff files a charge but merely fails to meet

11

administrative deadlines, the Court is not deprived of jurisdiction." Id. (citing Doak, 798 F.3d at 1104–05); see Williams v. Brennan, 320 F. Supp. 3d 122, 127–28 (D.D.C. 2018) (discussing the distinction between jurisdictional and non-jurisdictional exhaustion under the Rehabilitation Act). Thus, failure to exhaust one's administrative remedies in this latter situation is an affirmative defense and the defendant bears the burden of establishing that the plaintiff failed to timely exhaust. See Ayo-Aghimien, 2025 WL 407308, at *4.

As an initial matter, the Court notes that the plaintiff filed an administrative charge of discrimination and the Secret Service issued a Final Agency Decision prior to the filing of the plaintiff's Complaint in this case, see Compl. ¶¶ 6–8, and therefore the Court is not without jurisdiction and assesses the plaintiff's alleged failure to exhaust his administrative remedies under Rule 12(b)(6), see Ayo-Aghimien, 2025 WL 407308, at *4. Thus, it is the defendant's burden to show that the plaintiff failed to timely exhaust his administrative remedies. See id.

As indicated above, the defendant argues that because the plaintiff's contact with an EEO counselor was initiated on May 5, 2022, pursuant to the Rehabilitation Act he may only bring claims within the forty-five-day period predating that contact, i.e., only claims based on conduct that occurred on or after March 21, 2022. See Def.'s Mem. at 9–10; see also Def.'s Mot., Ex. 1 (EEO Counseling Report).[6] Thus, according to the defendant, the plaintiff failed to timely exhaust his administrative remedies as to all of his claims except for those arising out of the notice of proposed indefinite suspension, which occurred on March 28, 2022. See Def.'s Mem. at 9–10; Compl. ¶ 45.

---

[6] Courts have regularly taken judicial notice of administrative charges and EEO counseling reports under similar circumstances and where neither party disputes their authenticity without converting a motion to dismiss pursuant to Rule 12(b)(6) into a motion for summary judgment. See, e.g., Stephens v. Mnuchin, 317 F. Supp. 3d 413, 417 (D.D.C. 2018) (listing cases).

The plaintiff appears to admit as much, noting that, in the absence of a hostile work environment claim, "any untimely discrete acts cannot provide a basis for recovery as they are not independently actionable and thus can only be considered as background evidence in support of his harassment claims." Pl.'s Opp'n at 8. Although the plaintiff alludes to a separate legal standard applicable to the timeliness of hostile work environment claims, see id. at 7–8, the plaintiff did not plead a hostile work environment claim in this case, see generally Compl., and therefore this rule is inapplicable.

Thus, the Court concludes that because the record in this case clearly shows—and the plaintiff does not dispute—that the plaintiff "initiated contact" with an EEO counselor on May 5, 2022, he may only maintain discrimination and retaliation claims arising out of conduct that occurred on or after March 21, 2022, see 29 C.F.R. § 1614.105, i.e., only the claims arising out of his proposed indefinite suspension on March 28, 2022. Accordingly, the Court concludes that the plaintiff failed to timely exhaust his administrative remedies as to all other claims and that these claims must be dismissed for failure to state a claim under the Rehabilitation Act.

B.  **Whether the Plaintiff Has Stated Discrimination and Retaliation Claims Arising Out of His Proposed Indefinite Suspension**

Having concluded that the plaintiff exhausted his administrative remedies as to his claims arising out of his proposed indefinite suspension on March 28, 2022, the Court now addresses the merits of the components of his disability discrimination and retaliation claims relating to his proposed indefinite suspension.[7] The defendant argues that these remaining claims fail because

---

[7] The defendant also argues that the plaintiff's claims arising out of the proposed indefinite suspension are not actionable because the proposed suspension was predicated on the suspension of the plaintiff's security clearance, which is not reviewable based on the Supreme Court's decision in Department of the Navy v. Egan. See Def.'s Reply at 10 (citing 484 U.S. 518 (1988)); cf. Ryan v. Reno, 168 F.3d 520, 523 (D.C. Cir. 1999) (holding that "under Egan[,] an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII"). However, because the Court concludes that the plaintiff has failed to properly allege any adverse action
(continued . . .)

13

the plaintiff never in fact served the suspension, and therefore, the plaintiff has failed to establish any adverse employment action pursuant to the Rehabilitation Act. See Def.'s Mem. at 19. In response, the plaintiff first appears to argue—in response to the defendant's argument regarding his disability discrimination claim—that he has stated a hostile work environment claim under the Rehabilitation Act. See Pl.'s Opp'n at 9. However, as the Court has already concluded, the plaintiff did not properly plead a hostile work environment claim in his Complaint and thus may not now seek to advance one. See McManus v. District of Columbia, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). Nor does the plaintiff effectively respond to the defendant's argument that he failed to establish that he was subjected to a materially adverse action in support of his retaliation claim arising out of the proposed indefinite suspension. Rather, the plaintiff merely quotes legal authority describing the general standard for what constitutes materially adverse actions. See Pl.'s Opp'n at 13–14. Although the defendant argues that the plaintiff's failure to respond to these arguments warrants the Court treating them as conceded, see Def.'s Reply at 8–9, the Court will nonetheless briefly address them out of an abundance of caution.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination" by a federal agency. 29 U.S.C. § 794(a). To state a claim of disability discrimination under the Rehabilitation Act, the plaintiff must allege that "(1) [he] was a qualified individual with a disability[;] (2) [his] employer knew of her disability[;] and (3) [he]

---

(. . . continued)
in the first instance, it need not proceed to conclusively determine whether and to what extent Egan precludes judicial review of the plaintiff's claims based on those alleged adverse actions.

14

suffered an adverse employment action because of [his] disability." Congress v. District of Columbia, 324 F. Supp. 3d 164, 175 (D.D.C. 2018). The Supreme Court has recently clarified that an adverse employment action is one that causes "some harm." Muldrow v. City of St. Louis, 601 U.S. 346, 354–55 (2024).

"The elements of retaliation . . . claims are the same under Title VII and the Rehabilitation Act." Doak v. Johnson, 19 F. Supp. 3d 259, 280 (D.D.C. 2014), aff'd, Doak v. Johnson, 798 F.3d 1096 (D.C. Cir. 2015)). Accordingly, the plaintiff "must plausibly allege that (1) [he] 'engaged in statutorily protected activity,' (2) [he] 'suffered a materially adverse action by [his] employer,' and (3) the two are causally connected." Cf. Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024) (quoting Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of the Libr. of Cong., Inc. v. Billington, 737 F.3d 767, 772 (D.C. Cir. 2013)) (Title VII). An act is materially adverse if it objectively "would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination[.]'" Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008).

Fatal to the plaintiff's claims in this case is binding District of Columbia Circuit precedent which notes that "courts have been unwilling to find adverse actions where the [proposed] suspension is not actually served." Id. at 1199 (concluding that proposed two-day and thirty-day suspensions were neither adverse employment actions nor materially adverse). Indeed, both the D.C. Circuit and other members of this court have routinely rejected similar discrimination claims where there are no other harms arising out of a proposed suspension. See Russell v. Principi, 257 F.3d 815, 819–20 (D.C. Cir. 2001) (holding "unrealized risk" of future adverse action "too ephemeral to constitute an adverse employment action"); Tyson v. Brennan, 277 F. Supp. 3d 28, 36 (D.D.C. 2017) ("[A] proposed suspension that is never served and is later

15

rescinded does not constitute an adverse action for purposes of an employment discrimination claim.").[8] Similarly, members of this Court have consistently concluded that a notice of proposed removal or suspension "ordinarily does not state a materially adverse action[,]" Hornsby v. Watt, 217 F. Supp. 3d 58, 68 (D.D.C. 2016), because such a notice, without more, does not give rise to any "tangible harm or materially adverse consequence" to the plaintiff, Boykin v. England, No. 02-cv-950 (JDB), 2003 WL 21788953, at *5 (D.D.C. July 16, 2003).

Here, the Court concludes that the plaintiff has not alleged any harms arising out of the proposed indefinite suspension, such that it caused him "some harm[,]" Muldrow, 601 U.S. at 354–55, or that it "would have dissuaded a reasonable worker from making or supporting a charge of discrimination[,]" Baloch, 550 F.3d at 1198. Thus, the Court concludes that the plaintiff's proposed indefinite suspension—which the plaintiff never served and he does not allege gave rise to other harms—constitutes neither an adverse employment action for the purposes of his disability discrimination claim, nor a materially adverse action for the purposes of his retaliation claim. Accordingly, the plaintiff's claims under the Rehabilitation Act must be dismissed for failure to state a claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss.

---

[8] While these decisions predate the Supreme Court's recent decision in Muldrow, that decision does not appear to disturb the D.C. Circuit's binding precedent under circumstances where the plaintiff does not allege that the proposed indefinite suspension does not give rise to "some harm" to the employee. See Muldrow, 601 U.S. at 354–55.

**SO ORDERED** this 23rd day of September, 2025.[9]

REGGIE B. WALTON  
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.